**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY – CAMDEN**

JESSIE BROWN
      Plaintiff,

          vs.

CAROL MINCEY (in her official and
    individual capacity); and,
BOROUGH OF PENNS GROVE
      Defendants

Civil Action Number
11-CV-7139 (NLH/ KMW)

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT**
**PURSUANT TO FRCP 12(b)(6)**

**On behalf of the Defendant**
**The Borough of Penns Grove**

---

BARKER, SCOTT, GELFAND & JAMES
A Professional Corporation
1939 Route 70 East ~ Suite 100
Cherry Hill, New Jersey 08003
(856) 874-0555
TGelfand@BarkerLawFirm.net

On the Brief:
Todd J. Gelfand, Esquire

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................. 1

II.   STATEMENT OF UNDISPUTED FACTS ............................... 2

III.  LEGAL ARGUMENT .............................................. 6

      A.    Standard of Review ...................................... 6

      B.    Count I Of The Complaint Must Be Dismissed As To Penns
            Grove Because Plaintiff Has Failed To Make Any Factual
            Allegations Of A Municipal Policy, Practice, Or Custom
            Which Caused The Alleged Violation ..................... 10

      C.    Count I Must Be Dismissed As To Both Defendants As
            There Are Insufficient Allegations To Support A Claim
            That Defendant Mincey Acted Under Color Of State Law  .... 17

IV.   CONCLUSION .................................................. 21

Table of Contents/ Table of Citations                                Page i
Motion to Dismiss Pursuant to FRCP 12(b)(6) on behalf of the
Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

## TABLE OF CITATIONS

Anderson v Liberty Lobby, Inc.,
    477 US 242 (1986) ........................................10

Argueta v United States Immigration and Customs
Enforcement ("ICE"),
    643 F.3d 60 (3d Cir. 2011) ...............................8, 9

Ashcroft v Iqbal,
    129 S.Ct. 1937 (2009) ....................7, 8, 9, 14, 15

        Citing, Bell Atlantic Corp. v Twombly,
    550 US 544 (2007) .........................................7

Bangura v City of Philadelphia,
    388 Fed. Appx. 261 (3d Cir. 2009) ...............13, 14, 16

Basista v Weir,
    340 F.2d 84 (3d Cir. 1965) ...............................17

Bell Atlantic Corp. v Twombly,
    550 US 544 (2007) .........................................7

Cherrits v Ridgewood,
    311 NJ Super. 517 (App. Div. 1998) ..................12, 16

City of Canton v Harris,
    489 US 378 (1979) ........................................11

City of Oklahoma City v Tuttle,
    471 US 808 (1985) ....................................11, 12

Hishon v King & Spalding,
    467 US 69 (1984) ..........................................6

In Re: Warfarin Sodum,
    214 F.3d 395 (3d Cir. 2000) ...............................6

Laxalt v McClatchy,
    622 F.Supp. 737 (D.Nev. 1985) ...........................17

Lee v Patel,
    564 F.Supp. 755 (ED Va. 1983) ...........................18

Table of Contents/ Table of Citations             Page ii
Motion to Dismiss Pursuant to FRCP 12(b)(6) on behalf of the
Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

Loigman v Twp Committee of Middletown,
     185 NJ 566 (2006) ............................... 12, 15

Losch v Borough of Parkesburg,
     736 F.2d 903 (3d Cir. 1984) ...................... 13

McTernan v City of York,
     564 F.3d 636 (3d Cir. 2009) ............... 11, 13, 16

     Citing, Phillips v City of Allegheny,
     515 F.3d 224 (3d Cir. 2007) ...................... 13

Monell v Department of Social Services of City of New York,
     436 US 658 (1978) ............................... 11

Natale v Camden County Correctional Facility,
     318 F.3d 575 (3d Cir. 2003) ..................... 11

Oshiver v Levin, Fishbein, Sedran & Brennan,
     38 F.3d 1380 (3d Cir. 1994) ...................... 6

Pembaur v City of Cincinnati,
     475 US 469 (1986) ............................... 12

Phillips v City of Allegheny,
     515 F.3d 224 (3d Cir. 2007) ..................... 13

Powell v Jarvics,
     460 F.2d 551 (2d Cir. 1972) ..................... 17

Santiago v Warminster Township,
     629 F.3d 121 (3d Cir. 2010) .................. 8, 9, 15

Sutton v United Airlines, Inc.,
     527 US 471 (1999) ............................... 7

Thurber v Burlington City,
     191 NJ 487 (2007) .............................. 20

West v Atkins,
     487 US 42 (1988) ............................... 17

Table of Contents/ Table of Citations                    Page iii
Motion to Dismiss Pursuant to FRCP 12(b)(6) on behalf of the
Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

## I.   <u>INTRODUCTION</u>

The Defendant, the Borough of Penns Grove, brings this motion to dismiss the Amended Complaint in this matter pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of all claims against it. While this motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), the Borough seeks to rely upon one document, the transcript of the relevant municipal court trial, in further support of dismissal of the claims against it. The Borough thus recognizes that the motion may appropriately be evaluated under the standards for a motion for summary judgment under Rule 56. There is thus, included within this brief, a statement of separately numbered undisputed facts intended to comply with the Rule 56 requirements, should the Court deem that rule applicable.

Plaintiff alleges an elected member of the Penns Grove municipal government, Defendant Carol Mincey, filed a false harassment charge against Plaintiff because Plaintiff exercised her rights to speak as a citizen-activist in a Borough of Penns Grove council meeting. While the First Amended Complaint contains additional counts against Defendant Mincey, only Counts I and II are alleged against the Borough of Penns Grove.

Count I defectively accuses Penns Grove of municipal liability under the <u>Monell</u> standards outlined below, while Count II defectively alleges that Penns Grove was part of a Section 1983 conspiracy.

Under both counts, the basic problem with the Complaint is that,

assuming everything that Plaintiff alleges is true, the Borough of Penns Grove has neither individual nor conspiratorial liability for the actions of former Council Member Mincey. Mincey acted on her own, just as any other private citizen pursuing criminal prosecution as a witness and victim. There is no allegation that Mincey actually abused or perverted any authority over municipal or police operations which she may have by virtue of her office as a matter of state law, in pursuing the criminal charges against Plaintiff. If there is any liability here, it is individual liability which rests with Defendant Mincey.

## II. <u>STATEMENT OF UNDISPUTED FACTS</u>

A.   Attached as Exhibit 1 hereto is a true and correct, certified transcript of the municipal court hearing of April 26, 2011 in the Borough of Pitman Municipal Court, which presided over the municipal court trial, as a conflicts court, for the municipal court matter which is the subject matter of this lawsuit.

B.   During a Penns Grove governing body meeting on November 2, 2010, Defendant former Penns Grove Council member Mincey alleges that Plaintiff Brown, following some commentary as a citizen on a pending political issue, sat down and directed the following comment at Defendant Mincey: "and you better not come outside." (Exhibit 1, p. 13).

C.   Fellow former Council Member Venello later testified under oath at the municipal court trial that he, Venello, saw Plaintiff

April 16, 2012/ 2 pm
Page 2 of 21
Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

Brown mouth the words and heard her say "you better not come outside." (Exhibit 1, pp. 22-23).

D.   Gary Doubledee, Chief of Police for the Borough of Penns Grove, testified in municipal court that he had been in the back of the room during the meeting when the threat was alleged to have occurred and saw Plaintiff Brown make her remarks to Council about the political issue, then saw her return to her seat. (Exhibit 1, p. 50)

E.   Chief Doubledee testified that he did not hear Brown make any threat, but heard someone behind him out in the hallway say "don't you come outside." Chief Doubledee testified that the remark from the hallway was loud enough for everyone to hear. (Exhibit 1, pp. 50-52).

F.   Defendant Mincey alleged that she interpreted Plaintiff Brown's alleged remark as a threat. Plaintiff alleges that the remark was never made and Mincey never really interpreted anything as a threat, but filed a criminal complaint against her in retaliation for Plaintiff's opposition on the political issue being discussed or for other political reasons. (Exhibit 1, pp. 13-14).

G.   In fact, if indeed such a threat were made, it has the legal capacity to be a violation of the harassment statute, N.J.S.A. 2C:33-4(a) with which Plaintiff Brown was charged, as the definition of that offense includes, with a purpose to harass, making a communication in any manner likely to cause annoyance or alarm.

H.   Plaintiff alleges that Defendant Mincey made this allegation regarding the threat, which caused a criminal complaint to issue and a

summons to be issued charging Plaintiff with the harassment violation. (Complaint, paragraphs 21-22).

I. Plaintiff alleges that Defendant Mincey "appli[ed] for a warrant for the arrest of the Plaintiff," (Complaint, paragraph 21), but that only a Complaint Summons was issued compelling Plaintiff Brown's court appearance on the charge. (Complaint, paragraph 22).

J. At the municipal court hearing on April 26, 2011, Brown moved for dismissal of the harassment charge at the conclusion of the State's case, before proceeding with the defense case. (Exhibit 1, pp. 29-31).

K. Without any commentary suggesting the charges were filed for illicit purposes, the transcript shows that the municipal court judge simply noted that the standard for such a motion is quite different than the standard for deciding guilt or innocence, as the court was required to give the State the benefit of all inferences from the evidence and testimony. (Exhibit 1, p. 31).

L. At the conclusion of the municipal court trial, the judge found that all witnesses who testified "were credible," including Mincey, Venello, Doubledee and Penns Grove's municipal clerk Sharon Williams. (Exhibit 1, p. 79). As to Ms. Mincey in particular, the judge found her "very credible." (Exhibit 1, p. 79). However, the judge dismissed the charge as he found, despite noting the credibility of ALL witnesses, that Chief Doubledee's testimony about having heard a similar remark out in the hallway while having seen Brown return to

April 16, 2012/ 2 pm
Page 4 of 21
Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

her seat without saying anything, created reasonable doubt. (Exhibit 1, pp. 80-81).

M.   Plaintiff Brown alleges that Mincey unjustly pursued the harassment charge to stifle Brown's activities and opposition to Mincey's and Venello's actions on the council. (Complaint, paragraph 28).

N.   Plaintiff Brown makes no allegation that Defendant Mincey committed any act or made any allegation by which mis-used or abused any authority she had as a governing body with respect to municipal police operations elected official in pursuing the charges. There is no allegation that Mincey used the police department or her official influence over it to accomplish anything which any ordinary citizen could not have accomplished in making a criminal allegation against another person.

O.   Plaintiff Brown cites no other facts to suggest a municipal policy, custom or practice in Penns Grove of pursuing criminal charges in order to silence political opposition. In fact, to the contrary, Plaintiff Brown alleges that other people perceived as or identifying themselves as political opposition **were not** subject to charges like Brown herself was. (See e.g., Complaint, paragraph 38). In fact, on the particular issue about which Plaintiff Brown was speaking at the meeting, and for which she alleges she suffered retaliation in the form of false criminal charges, Plaintiff Brown alleges that she was one of numerous citizens on her side of the issue and in opposition to

Mincey and Venello, (see e.g., Complaint paragraphs 12, 15 and 16) yet none of the others were subject to any charges.

## III.   LEGAL ARGUMENT

### A.   Standard of Review

As noted above, this is perhaps a somewhat atypical motion, in that it seeks judgment on the pleadings with the addition of only one exhibit for consideration, the municipal court transcript. Whether this motion is analyzed under the motion to dismiss standards of FRCP 12(b)(6) or the motion for summary judgment standard, it is submitted that either standard is met and the Complaint should be dismissed as to Penns Grove.

The standard for a motion to dismiss on the pleadings under FRCP 12(b)(6) requires that the Court must accept as true all allegations in the Complaint and all reasonable inferences that can be drawn there-from, and view them in the light most favorable to the non-moving party. See, Oshiver v. Levin, Fishbein, Sedran & Brennan, 38 F.3d 1380, 1384 (3d Cir. 1994). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. See, Hishon v. King & Spalding, 467 US 69, 73 (1984).

Nonetheless, the Complaint should be dismissed if the alleged facts, taken as true, fail to state a claim. See, In re Warfarin Sodum, 214 F.3d 395, 397 (3d. Cir. 2000). While a court will accept

well-pled allegations as true for the purposes of the motion, it should not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See, Sutton v. United Airlines, Inc., 527 US 471, 475 (1999).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard that Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id. at 555; (internal citations omitted).

A pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) citing, Twombly, 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) citing, Twombly, 550 U.S., at 557.

Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id.

This standard has been examined in significant detail by the United States Supreme Court in Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) and recently quoted at length by the Third Circuit in such cases as Argueta v. United States Immigration and Customs Enforcement ("ICE"), 643 F.3d 60 (3d Cir. 2011) and Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010). In fact, both Iqbal and Argueta were "Bivens" actions noted by the Courts to be the federal analog of suits under 42 U.S.C. Section 1983 for state actors and Santiago was a suit under 42 U.S.C. Section 1983..

Iqbal held that such a pleading must include more than:

- an unadorned, the-defendant-unlawfully-harmed-me accusation;
- labels and conclusions;
- a formulaic recitation of the elements of a cause of action; or
- naked assertions

Iqbal at 1949. The Iqbal Court continued, noting that "a complaint must contain sufficient factual matter… to state a claim to relief that is plausible on its face." The Court explained that "facial plausibility" means "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but that the standard "demands more than a sheer possibility

that the defendant acted unlawfully" and "a complaint pleading facts that are merely consistent with liability is insufficient." Id.

The Iqbal Court suggested a two step framework by which "a court should start by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. From there, the Court should examine only those "well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

The claims in Iqbal were dismissed on this basis, as were the claims against the supervisory defendants in Argueta. Both cases provide detailed analysis of the level of specificity necessary to plead Section 1983 liability.

In Santiago, the Third Circuit viewed the two step process set forth in Iqbal as really a three step process. The first step, noted by the Supreme Court in Iqbal but not counted by the Supreme Court as a step in the analysis, is to "begin by taking note of the elements a Plaintiff must plead to state a claim." The second and third steps then track Iqbal, such that the second step requires the court to identify the allegations in the Complaint which are no more than conclusions, not entitled to the assumption of truth. Third, the Court should take the remaining well-pleaded factual allegations, assume their veracity, "and determine whether they *plausibly* give rise to an entitlement to relief." Santiago, 629 F.3d at 129-130 (emphasis added), examining Iqbal.

Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts should not preclude a grant of summary judgment. Id.

**B.** **Count I Of The Complaint Must Be Dismissed As To Penns Grove Because Plaintiff Has Failed To Make Any Factual Allegations of a Municipal Policy, Practice or Custom Which Caused the Alleged Violation**

The only claims which are directed against the Borough of Penns Grove are set forth in Counts I and II of the Complaint. In Count I, Plaintiff alleges that the Borough of Penns Grove is liable under 42 U.S.C. §1983 for the violation of her civil, constitutional rights protected by the first, fourth and fourteenth amendments to the U.S. Constitution. In Count II of the Complaint, Plaintiff alleges that the Borough has liability as part of a conspiracy with Defendant Mincey to deprive Plaintiff of her civil rights, also allegedly in violation if 42 U.S.C. §1983. The remaining allegations are explicitly directed against the individual Defendants only. (See, Complaint, ¶¶41 through 46).

Under 42 U.S.C. §1983, municipalities cannot be held vicariously liable for the actions of its employees under a theory of *respondeat*

April 16, 2012/ 2 pm
Page 10 of 21
Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

*superior* or solely because the municipality employed a tortfeasor. See, City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

When a suit against a municipality is based on § 1983, the municipality is liable only when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. See, McTernan v. City of York, 564 F.3d 636, 657 (3d Cir. 2009); Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). A "policy" is "implemented" when a "decision maker possessing final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict." Monell, 436 U.S. at 658. A "custom" is "adopted" when an unauthorized practice is "so permanent and well-settled as to virtually constitute law." Id.

To state a claim for municipal liability under Section 1983, the plaintiff must sufficiently allege that "there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378 (1979).

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). However, the plaintiff carries the burden of demonstrating the existence of a particular municipal policy or custom, and further proving that such policy subjected or caused him to be subjected to constitutional injury. See City of Oklahoma v. Tuttle, 471 U.S. 808, 829-830 (1985).

One factor included in the analysis of whether a particular action by a municipal official was taken pursuant to a policy, practice or custom sufficient to implicate municipal liability include whether the municipality has officially sanctioned or ordered the particular action. Loigman v. Twp. Committee of Middletown, 185 N.J. 566, 590 (2006).

As an example particularly appropriate here, the Court in Cherrits v. Ridgewood, 311 N.J.Super. 517 (App. Div. 1998) faced the allegation that a Plaintiff was arrested pursuant to a municipal policy of "depriving democrats of their rights to due process, free speech, freedom of assembly, freedom to be secure in their persons without unreasonable searches and seizures, and by preventing democrats from supporting or advocating a candidate." Id. at 527-528. The Court found that while the plaintiff had indeed used the applicable boilerplate language in the Complaint to make that allegation, there was no factual averment at all to support the allegation that such a policy existed in the defendant municipality of

Ridgewood. The Court noted that such a policy could by no means be inferred from the plaintiff's arrest, particularly because the plaintiff was the only person arrested from among 15-20 political supporters at issue. That analysis resulted in dismissal of the municipality itself, for the same basic deficiencies as are present with the instant First Amended Complaint.

To satisfy the pleading standards required for municipal liability, a plaintiff must identify a custom or policy, and specify what exactly that custom or policy was. McTernan, supra, 564 F.3d at 658. In addition to identifying the challenged policy or custom, to state a claim for municipal liability, a plaintiff must attribute the policy or custom to the municipality itself, and show a causal link between execution of the policy and the injury suffered. Losch v. Borough of Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

In McTernan v. City of York, the Third Circuit held that the plaintiff's allegation that his rights were violated "due to the City's policy of ignoring First Amendment right[s]" was insufficient to identify the relevant policy or custom. McTernan, supra, 564 F.3d at 658. The court reasoned that "[m]ere assertion of an entitlement to relief, without some factual "showing," is insufficient under Fed. R. Civ. P. 8(a)(2). Id., citing Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2007).

Similarly, in Bangura v. City of Philadelphia, the Third Circuit held that the plaintiff's allegation that "it is the custom or

practice if the Police Department to inappropriately handle custody order violations" was insufficient to state a 1983 claim against the City. 338 Fed. Appx. 261, 266 (3d Cir. 2009). The court reasoned that the plaintiff did not allege any facts to support an inference that the City of Philadelphia followed a deficient policy with respect to child custody disputes. Id.

For purposes of this motion only, the Borough does not dispute that Defendant Mincey has perhaps some degree of policy-making authority over the police department by virtue of her alleged status as the civilian authority with the oversight responsibility for the oversight of the police department pursuant to a Borough Ordinance designating her as the "appropriate authority" under N.J.S.A. 40A:14-118. It is indeed disputed, however, that Mincey's actions in this case set forth or were taken pursuant to any policy, custom or practice attributable to the Borough as is nonetheless a requirement for municipal liability. Nor do the allegations of the Complaint provide sufficient factual assertions to meet the Iqbal standards in pleading the claim that, as a policy-maker, Mincey's single act of pursuing a criminal complaint against Brown is or was a municipal policy or custom.

Plaintiff Brown has provided no factual averment whatsoever to support the conclusion that Defendant Mincey acted pursuant to, or by acting established, a municipal policy or custom for the Borough of Penns Grove. There is no factual specificity at all and stripping away

the boilerplate language in the pleadings as instructed by Iqbal and Santiago leaves no factual specificity at all to support the boilerplate suggestion of municipal policy or custom at play. The only well-pleaded factual allegations in this regard are that Mincey is alleged to be a policy-maker because of certain facts regarding the ordinance and her powers over police operations given the ordinance and state law, after which we have well pleaded factual allegations as to Mincey's actions.

The missing link which requires dismissal of the First Amended Complaint as to Penns Grove, however, comes from the fact that there is not a single factual allegation pleaded which, if assumed to be true, could satisfy the requirement that the actions pleaded, taken by the policy-maker, were actually taken pursuant to a municipal policy or custom. As noted, a single action can be enough to show a municipal policy or custom where that single action has some approval by the governing body or was ordered or sanctioned by the governing body, as noted in Loigman. If that were the case, however, it must be pleaded with factual specificity under the Iqbal standards. Here, however, we know factually and it is not the subject of any genuine dispute that the governing body of Penns Grove took no official action to sanction, support or direct the filing of the criminal charges against Plaintiff Brown.

Reaching the same conclusion perhaps somewhat differently, there is nothing in the Complaint which pleads and tells the reader what the

April 16, 2012/ 2 pm
Page 15 of 21
Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

alleged municipal policy or custom actually is which Plaintiff alleges caused the constitutional violation. There is moreover no factual basis pleaded which, if proven or assumed to be true, might meet that element of Plaintiff's proofs to demonstrate that there was such a policy or Mincey's actions created a policy.

Brown does not allege that any political opposition either prior to or since November 2, 2010 has ever been subject to an effort to silence the opposition through the filing of false criminal charges. In fact, Plaintiff concedes that she was part of a larger political contingent with a relatively common political goal which was being trumpeted by the group, i.e., opposition to the creation of the Public Safety Director position. Just like in Cherrits, there was a whole group of similarly situated persons who were not charged with or accused of anything. If there were indeed any policy, practice or custom of arresting the political opposition or charging the political opposition falsely, the rest of the political opposition would have been charged as was Plaintiff Brown. The fact that Plaintiff Brown does not allege anyone else was charged with anything belies her claim of municipal policy, practice or custom entirely.

Plaintiff's allegations are even more insufficient as compared to the plaintiffs' claims in McTernan and Bangura which failed. Plaintiff fails to sufficiently factually set forth a policy or custom, but rather makes just the type of "naked assertion devoid of further factual enhancement" that fails the pleading standards of Federal Rule

of Civil Procedure 8(a)(2). Even worse, however, Plaintiff's own factual allegations support the absence of policy, practice or custom more so than supporting that conclusion.

C. **Count I Must be Dismissed as to Both Defendants as There Are Insufficient Allegations to Support a Claim that Defendant Mincey Acted Under Color of State Law**

42 U.S.C. §1983 only provides a cause of action for deprivations of rights by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." "The traditional definition of acting under color of state law requires that the defendant have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988); Basista v. Weir, 340 F.2d 74, 80 (3d. Cir. 1965).

For example, even when a United States Senator used his official stationary to serve a demand letter before filing a defamation action because of stories linking the Senator to organized crime, the Court determined that the Senator acted just as any private party could have under state law, thus finding that the letter was not an action under color of state law. Laxalt v. McClatchy, 622 F.Supp. 737 (D. Nev. 1985). In a Second Circuit case it was held that a witness who commits perjury is not acting under color of law. Powell v. Jarvics, 460 F.2d 551 (2d. Cir. 1972). Similarly, a person who signs a false sworn complaint to secure an arrest warrant has not acted sufficiently under color of state law for Section 1983 liability, even though the

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003

complaint is submitted to a magistrate who ultimately signs the warrant. Lee v. Patel, 564 F.Supp. 755 (E.D.V.A. 1983).

It is thus clear that the mere use of the judicial system for the filing of charges cannot be sufficient to meet the "color of law" requirement for 1983 liability. That is all that is alleged here. This would be an entirely different case if it were alleged that there was some secret meeting between Defendant Mincey and some police official by which the ordinary procedure(s) for a citizen to file a disorderly persons complaint were bypassed. It would be an entirely different case if, as another example, it were alleged that there is some reason the police department processed Defendant Mincey's complaint against Plaintiff Brown in some fashion or under circumstances such that the same thing would not have happened if an ordinary citizen sought to file the same complaint. There is no such allegation in any of the pleadings here.

In fact, quite to the contrary, the Complaint pleads that Mincey wanted an arrest warrant to issue for Plaintiff Brown, however there was no arrest warrant issued but only a summons/complaint. Moreover, rather than obtaining any special favor or accommodation by virtue of her state-law-created status as the sworn civilian authority over the police department, Defendant Mincey's case was entirely undermined by the Chief of Police, the only police officer involved in the matter at all. Chief Doubledee's testimony that Plaintiff Brown did not make the alleged threat and that somebody else out in the hallway did so was

the controlling factor by the municipal court judge in finding reasonable doubt for the acquittal.

Acceptance of citizens' complaints is governed by New Jersey Court Rule. Particularly, among other rules, R. 7:2-1(b) provides that "the municipal court administrator or deputy court administrator shall accept for filing every complaint made by any person." While the Complaint seems to take issue with the lack of investigation by the police prior to the complaint and the failure to interview the municipal clerk, the fact of the matter is that with or without any investigation, the municipal court was obligated to accept and process Mincey's complaint against Brown whether Mincey was a citizen or elected official. The procedures for the processing and disposition of the case from there, including probable cause hearing(s), warrants, bail, etc. are all governed by Court Rule. There is no factual suggestion or averment here to suggest that there was any deviation from any of these Court Rules by virtue of Defendant Mincey's elected official or appropriate authority status.

In fact, other than Chief Doubledee's involvement as a witness by happenstance to the events of the criminal complaint, there is no allegation that this was a police matter at all. The Amended Complaint apparently seeks to paint it as such in order to shoe-horn the matter into a Section 1983 claim with Monell liability by setting forth Defendant Mincey's statutory authority over the police department. (See e.g., Complaint paragraphs 42 through 44). Despite the

misdirection, the procedure for the filing, service and processing of municipal court complaints, by Court Rule, does not involve the police at all but rather is through the municipal court.

The fact of this being a municipal court matter from the time Defendant Mincey determined to file charges completely undermines Plaintiff's attempt to suggest that Mincey acted as a Penns Grove policy maker. Assuming the truth of Plaintiff's allegations about Mincey's authority under N.J.S.A. 40A:14-118 as the civilian head of the police department, that authority does not extend over the municipal court. As outlined by the New Jersey Supreme Court in Thurber v. Burlington City, 191 N.J. 487 (2007), while the municipality retains certain personnel responsibilities with regard to civil service court personnel, for issues which relate to the administration of the municipal court system and processing matters through the municipal court system, under the New Jersey Constitution and Court Rules consistent therewith, those are issues under the purview of the judicial branch. An individual governing body member like Defendant Mincey, even if she is also the statutorily defined appropriate authority under N.J.S.A. 40A:14-118, is certainly nonetheless NOT a judicial branch policy maker for the municipal court system.

In summary, Defendant Mincey did not file the charge against Plaintiff Brown under color of law; Mincey did so no differently than any other citizen files any criminal complaint. Defendant Mincey was

not afforded any special treatment and her complaint was handled as set forth by the Court Rules. Defendant Mincey's conduct thus cannot form the basis for Section 1983 liability herself or for the municipality.

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully submitted that all claims against the Defendant, the Borough of Penns Grove, should be dismissed pursuant to FRCP 12(b)(6).

Respectfully Submitted,

**BARKER, SCOTT, GELFAND & JAMES
a Professional Corporation**

By: _____
Todd J. Gelfand, Esquire

Dated: __4-17-12_____

---

Motion to Dismiss Pursuant to FRCP 12(b)(6)
On behalf of the Defendant, the Borough of Penns Grove

April 16, 2012/ 2 pm
Page 21 of 21

BARKER, SCOTT, GELFAND & JAMES · A PROFESSIONAL CORPORATION · CHERRY HILL, NEW JERSEY 08003